**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**NORBERT STURDEVANT,**

        **Plaintiff,**

**v.**                                              **Civil Action No. 1:09cv115**
                                                       **(Judge Keeley)**

**ERIC HOLDER AND THE**
**FEDERAL BUREAU OF PRISONS,**

        **Defendants.**

**OPINION/REPORT AND RECOMMENDATION**

### I. Procedural History

The *pro se* plaintiff, initiated this civil rights action on August 7, 2009. He was granted permission to proceed as a pauper on September 1, 2009, and no initial partial filing fee was assessed. Therefore, on that same day, the Court conducted a preliminary review of the complaint and directed the defendants to file an answer. The defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on November 6, 2009. Because the plaintiff is proceeding without counsel, a Roseboro Notice issued on November 12, 2009. The plaintiff filed a response to the defendants' motion on December 4, 2009. This case is before the undersigned for a Report and Recommendation on the defendants pending motion.

### II. Contentions of the Parties

**A. The Complaint**

The plaintiff was convicted in the United States District Court for the Eastern District of Wisconsin. He is incarcerated at the Gilmer Federal Correctional Institution ("FCI-Gilmer") in Glenville, West Virginia. The plaintiff is a registered member of the Menominee Indian Tribe.

In the complaint, the plaintiff asserts that he has filed grievances requesting weekly sweat

lodge, pipe ceremonies and a yearly pow-wow with feast for enrolled and registered Native American Indians. He has also made a general request for protection of his religious rights. The plaintiff further asserts that the responses issued by the Bureau of Prisons ("BOP") have not adequately addressed the issues presented, avoided addressing the issues or have not responded to them at all. The plaintiff asserts that despite his incarceration, he has a right to his traditional religious practices that is guaranteed by Treaty, the United States Constitution and various federal laws.

As relief, the plaintiff seeks the following:

(1) an order directing Attorney General Eric Holder ("the Attorney General" or "Attorney General Holder") to fulfill his obligations to Indians for their protections as situated in the various laws enacted by Congress;

(2) an order directing the Attorney General to instruct subordinate agencies, namely, the BOP, to comply with the laws enacted for the benefit of Native American Indians;

(3) for subordinate staff, employees and/or personnel that fail to substantially effect and affect the laws of the United States for the protection of Native American Indians in the federal prison system to be held accountable for their failures;

(4) protection for all Native Americans incarcerated in the federal prison system now and in the future;

(5) an order directing the BOP to employ religious personnel that are actual practitioners of Native American Religions, in order to remove controversy of non-Indians being the authority over Native American Religious Practices; and

(6) to make mandatory full protection of the laws for Native American Indians enacted for their benefit.

B.  **The Defendants' Motion**

In their motion, the defendants assert that the bases for the plaintiff's complaint are not entirely clear. Therefore, to the extent that the plaintiff is asserting a Bivens claim,[1] the defendants argue that the BOP is not a proper defendant, that the Attorney General had no personal involvement in the alleged claims and that the plaintiff has failed to establish any violation of his religious rights. To the extent that the plaintiff seeks injunctive relief, the defendants assert that the plaintiff cannot establish irreparable harm or that he will prevail on the merits of his claims. To the extent that the plaintiff seeks mandamus relief, the defendants assert that the plaintiff does not have a clear right to the relief requested and that he has other means to obtain such relief.

C.  **The Plaintiff's Response**

In his response to the defendants' motion, the plaintiff first asserts that the Attorney General is authorized to control and manage the federal penal system. Thus, he is personally involved in the alleged violations. Second, the plaintiff asserts that his rights have been substantially burdened and again asks for protection from the actions of prison officials that violate those rights. He then lists several ways in which his rights are being violated. Third, the plaintiff reiterates that his rights are secured by treaty, the Constitution, and various federal statutes, and asks that his case not be dismissed.

### III.  Standards of Review

A.  **Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."

---

[1] Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), (authorizing suits against federal employees in their individual capacities).

Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but "must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id*. (citations omitted), to one that is "plausible on its face," *id*. at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id*.

**B.  Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at

5

248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV. Analysis

**A. Bivens Claims**

1. Federal Bureau of Prisons

In Bivens, *supra*, the United States Supreme Court created a counterpart to 42 U.S.C. § 1983, so that individuals could bring suit against a federal actor for violating a right guaranteed by the United States Constitution or federal laws. Therefore, like suits arising under § 1983, a Bivens cause of action is only available against federal officers in their individual capacities, and not the federal agency which employs the persons acting under federal law. See FDIC v. Meyer, 510 U.S. 471, 484-86 (1994) (refusing to find a Bivens remedy against a federal agency); see also Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under Bivens is against federal officials individually, not the federal government."). Thus, to the extent that the plaintiff in this case attempts to allege a Bivens cause of action against the BOP, that claim must be dismissed.

2. Attorney General Eric Holder

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Thus, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S.

6

362 (1976).

Nonetheless, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Id.* However, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. *Id.* Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. *Id.* In reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. *Id.*

In this case, the plaintiff does not allege any personal involvement on the part of Attorney General Holder. Instead, the plaintiff merely names defendant Holder in his official capacity as the Attorney General of the United States. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself and such suits are simply not authorized under Bivens. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Furthermore, the plaintiff has not provided any evidence that defendant Holder tacitly authorized or was indifferent to an alleged violation of his constitutional rights.

Accordingly, the plaintiff cannot maintain a Bivens claim against Attorney General Holder.

  3. Merits of the Plaintiff's Bivens Claims

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. With regard to prisoners, the Supreme Court has specifically found that a prison inmate retains only those First Amendment rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Therefore, a prison policy "alleged to infringe constitutional rights [is] judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone v. Estate Shabazz, 482 U.S. 342, 349 (1987). Furthermore, the Court is required to give deference to the judgment of prison administrators in First Amendment challenges. *Id.* at 350.

In this case, the plaintiff appears to allege that FCI-Gilmer either hinders his practice of, or fails to allow him to practice, certain Native American religious ceremonies, such as weekly sweat lodge, pipe ceremonies and a yearly pow-wow with feasts. In addition, the plaintiff complains that FCI-Gilmer has no Native American chaplains. However, the defendants' undisputed affidavits and exhibits belie these contentions.

According to the declaration of Chaplain Uhles, FCI-Gilmer offers weekly sweat lodge ceremonies for Native American inmates on Saturdays from 10:45 a.m. until 3:00 p.m. Def's Ex. 1 at ¶ 5. All inmates listed as Native American are allowed to participate in such religious activities. *Id*. at ¶ 4. Of his own choosing, the plaintiff has only participated in sweat lodge ceremonies on two occasions since his arrival at FCI-Gilmer in October of 2008. *Id*. at ¶ 6; Att. A.

8

In addition, despite a general ban on the possession and use of tobacco products by inmates, the BOP allows Native American inmates to smoke tobacco during religious Pipe Ceremonies. *Id.* at ¶ 9. Pipe Ceremonies are held during the weekly Sweat Lodge Ceremonies. *Id.* The plaintiff is authorized to participate in such ceremonies. *Id.*

Further, FCI-Gilmer allows ceremonial feasts for all religious groups, including Native Americans. *Id.* at ¶ 10. In fact, a Native American Feast was held on September 24, 2009, and the plaintiff participated in that feast. *Id.*; Att. C.

Moreover, although the defendants concede that FCI-Gilmer does not have a Native American chaplain nor has it had a pow-wow ceremony, see (dckt. 20) at 6, they assert that FCI-Gilmer has attempted to find volunteers willing and able to perform these duties. Def's Ex. 1 at ¶ 11. Unfortunately, because of the small pool Native American volunteers in the rural area of FCI-Gilmer, it has been unsuccessful. *Id.* Nevertheless, FCI-Gilmer has no obligation to hire a Native American chaplain or to secure a volunteer to perform a pow-wow. Cruz v. Beto, 405 U.S. 322 n.2 (1972) ("We do not suggest . . . that every religious sect or group within a prison . . . must have identical facilities or personnel."); Johnson v. Bey, 863 F.2d 1308, 1312 (7th Cir. 1988) (prisons are not required to employee chaplains of every faith); Wilson v. Moore, 270 F.Supp.2d 1328, 1351 (N.D.Fla. May 1, 2003) (finding that the BOP is not obligated to find religious volunteers to perform religious ceremonies).

Finally, the defendants note that FCI-Gilmer also sponsors other Native American ceremonies. Dckt. 20 at 6, n. 5. For example, the facility allows Native Americans one hour per week to attend the Talking Circle. *Id.* However, the plaintiff has only attended this activity on one occasion. Def's Ex. 1 at ¶ 7; Att. B. FCI-Gilmer has also allowed the plaintiff to obtain and possess eagle feathers in support of the practice of his religion. *Id.* at ¶ 8. The mere fact that the BOP does

9

not allow the plaintiff to smoke tobacco every day, or to possess every object or substance used by his religion,[2] is inapposite. The plaintiff is an incarcerated inmate. As such, his privileges are necessarily limited by the fact of his incarceration. Moreover, he concedes that the denial of certain substances and objects does not prevent him from practicing his religion. Dckt. 28 at 3. To the contrary, the plaintiff's practices are merely modified. *Id*.

For these reasons, the undersigned finds that even had the plaintiff named an appropriate Bivens defendant, he has failed to establish that a violation of his religious rights has occurred.

**B.   Injunctive Relief**

The standard for granting injunctive relief in this Court is set forth in Real Truth About Obama, Inc., v. Federal Election Comm'n, 575 F.3d 342 (4th Cir.2009). As articulated in Real Truth, before a court may grant injunctive relief, the movant is required to establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Id*. at 346 (citations omitted).

In this case, as noted elsewhere within this opinion, the plaintiff has failed to establish that he is likely to succeed on the merits of his claim. He has also fails to argue, much less establish, that he will suffer irreparable harm if an injunction does not issue, that the balance of equity tips in his favor or that an injunction is in the public interest. Accordingly, the undersigned finds that an injunction is not appropriate.

**C.   Mandamus Relief**

Pursuant to 28 U.S.C. § 1361, "the district courts shall have original jurisdiction of any

---

[2] See Plaintiff's response to the defendants' motion (dckt. 28) at 2-3.

action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, the Court's authority to issue a writ of mandamus extends only to the issuance of writs necessary or appropriate in aid of its jurisdiction. 28 U.S.C. § 1651. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." Kerr v. United States Dist. Court, 426 U.S. 394, 402 (1976). "The party seeking mandamus relief carries the heavy burden of showing that he has no other adequate means to attain the relief he desires and that his right to such relief is clear and indisputable." In re Beard, 811 F.2d 818, 826 (4th Cir. 1987) (internal quotations omitted). More specifically, the party seeking mandamus relief must demonstrate the following five requirements:

> (1) he has a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official act or duty; (4) there are no other adequate means to attain the relief he desires; and (5) the issuance of the writ will effect right and justice in the circumstances.

United States ex rel. Rahman v. Oncology Assocs., P.C., 198 F.3d 502, 522 (4th Cir. 1999).

Here, as noted above, the plaintiff has not established a clear and indisputable right to the relief sought. Moreover, there are other more adequate means to obtain the relief he desires. For instance, a properly filed Bivens complaint naming appropriate defendants. In addition, the facts of this case simply do not reveal the extraordinary circumstances required to invoke such a drastic remedy. Accordingly, the undersigned finds that mandamus relief should be denied.

### V. Recommendation

For the reasons stated, the undersigned recommends that the defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 19) be **GRANTED** and the plaintiff's complaint (dckt. 1) be **DISMISSED with prejudice** from the active docket of this Court.

Within ten (10) days after being served with a copy of this recommendation, any party may

file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: January 10, 2010

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE